**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| 22ND CENTURY TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CREATIVE SYSTEMS & CONSULTING, A SUBSIDIARY OF ICF INCORPORATED LLC, <br><br> Defendant. | Civil Action No. 22-3224 (ZNQ) (RLS) <br><br> **OPINION** |

**QURAISHI, District Judge**

    **THIS MATTER** comes before the Court upon a Motion to Dismiss ("the Motion") filed by Defendant Creative Systems & Consulting, a subsidiary of ICF Incorporated LLC ("Defendant" or "CSC") pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 12.) Defendant filed a memorandum of law in support of the Motion. ("Moving Br.", ECF No. 12-2). Plaintiff 22nd Century Technologies, Inc. ("Plaintiff") opposed the Motion ("Opp'n Br.", ECF No. 17), and Defendant filed a reply ("Reply Br.", ECF No. 18.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT the Motion.

---

[1] For the sake of brevity, all references herein to "Rule" will be to the Federal Rules of Civil Procedure.

1

I.      **FACTUAL BACKGROUND**[2]

Plaintiff is a New Jersey Corporation registered to transact business in the state of New Jersey with its principal place of business located in Somerset, New Jersey. (Complaint ("Compl.") ¶ 1, ECF No. 1.) Defendant is a Virginia limited liability company with its principal place of business located in Arlington, Virginia. (*Id*. ¶ 2.)

**Prime Contracts and Subcontractors**

Plaintiff's business partner, AttainX, designs, creates, and provides information technology solutions and consulting services for businesses and government agencies throughout the United States. (*Id*. ¶ 3.) AttainX performed work for the United States Department of Agriculture ("USDA") in connection with several prime contracts (collectively, "the Prime Contracts"). (*Id*. ¶ 4.) The Prime Contracts' period of performance ranged from June 28, 2018 through January 28, 2022. (*Id*. at ¶ 5.)

Plaintiff was the subcontractor to AttainX on the Prime Contracts. (*Id*. ¶ 6.) iLabs, Inc., ("iLabs") was a subcontractor of Plaintiff under AttainX's Prime Contracts, acting as a second-tier subcontractor to AttainX. (*Id*. ¶ 7.)

On or around May 11, 2016, Plaintiff and iLabs entered into a Master Contractor Agreement ("Master Contractor Agreement"). (*Id*. ¶ 9.) In conjunction with iLabs' subcontracts and Master Contractor Agreement with Plaintiff, iLabs was given access to trade secrets, confidential and proprietary methods and information. (*Id*. ¶ 10.) Madhan Subramanian ("Subramanian") of iLabs, the Architect for the Farm Loan Program Systems Operations Maintenance, Development, Modernization, and Enhancement program, which was the subject of the Prime Contracts, had access to Plaintiff's trade secrets, confidential and proprietary methods

---

[2] For purposes of this motion, the Court will take all facts alleged in the Amended Complaint as true. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

and information. (*Id*. ¶ 11.) Subramanian had full access to iLabs' rates, had hiring and firing power, and acted as the onsite project manager until Plaintiff became a subcontractor to AttainX. (*Id*. ¶ 12.)

The Prime Contracts required AttainX to provide maintenance, development, and modernization support to the Department of Agriculture Farm Loan Program. (*Id*. ¶ 13.) AttainX implemented the SAFE methodology through its work on the Prime Contracts. (*Id*. ¶ 14.) SAFE is an industry standard process and methodology, but its precise implementation is a trade secret to which iLabs was privy. (*Id*.) iLabs, its employees, and its sub-contractors were involved in the overall design and future implementation of Amazon Web Service ("AWS") solutions across the Farm Loan Programs with the core AttainX team. (*Id*. ¶ 15.) Subramanian was instrumental in the pilot design and development of the Farm Loan Programs applications, including Electronic Debt and Loan Restructure System ("EDLARS"). (*Id*. ¶ 16.) As a result, iLabs was entrusted with Plaintiff's trade secrets, confidential and proprietary methods and information. (*Id*. ¶ 17.)

Pursuant to the Master Contractor Agreement, iLabs agreed to provide information technology modernization related services to Plaintiff. (*Id*. ¶ 20.) The Master Contractor Agreement included Confidentiality, Solicitation, and Exclusivity provisions. (*Id*. ¶¶ 21, 22, 23.)

In addition to its subcontracts with Plaintiff under the Prime Contracts, iLabs also collaborated with Plaintiff on a USDA initiative known as ELM-3 in 2019. (*Id*. ¶ 24.) This collaboration lasted for approximately one year until the federal government cancelled the solicitation. (*Id*.)

ELM-3 was a "follow on" procurement of the USDA's CFLPIDS program, the program under which AttainX performed its Prime Contracts. (*Id*. ¶ 25.) AttainX planned to serve as the prime contractor for the ELM-3 initiative with Plaintiff as its subcontractor. (*Id*.)

In accordance with the Master Contractor Agreement, iLabs would continue to act as a subcontractor with Plaintiff as the parties pursued an ELM-3 contract. (*Id.* ¶ 26.) Subramanian participated in the preparation of the proposal for the ELM-3 contract, including preparation for oral presentations. (*Id.* ¶ 27.) As part of the team preparing for the ELM-3 procurement, iLabs and Subramanian had access to, and were exposed to, both Plaintiff's and AttainX's proprietary business strategies, trade secrets, win and pursuit strategies, competitive analysis, and technical responses for the government. (*Id.* ¶ 29.) Subramanian presented as a part of the Plaintiff/AttainX team to the federal government. (*Id.* ¶ 27.)

Plaintiff submitted a proposal in response to the ELM-3 solicitation. (*Id.* ¶ 28.)

On February 18, 2020, the USDA informed the industry community that ELM-3 had been renamed to SPRUCE. (*Id.* ¶ 30.)

The USDA, however, canceled the SPRUCE procurement after receipt of the proposals from contractors including AttainX. (*Id.* ¶ 31.) The USDA thereafter invited the top three contractors from the SPRUCE submissions to submit proposals for a one-year bridge contract. (*Id.*) CSC was not one of the three finalists invited to bid. (*Id.*) AttainX, however, fell within the top three and was invited to submit a proposal for the one-year bridge contract. (Id.)

AttainX, Plaintiff's business partner, was awarded a prime contract 12314420F0773, known as the Farm Loan Program Systems Operations, Maintenance, Development, Modernization and Enhancement Contract (the "One-Year Bridge Contract"). (*Id.* ¶ 32.) The One-Year Bridge Contract had a performance period of one year beginning on September 29, 2020. (*Id.*) The federal government then modified the period of performance, extending it through January 28, 2022. (*Id.*) In connection with the One-Year Bridge Contract, Plaintiff continued to work as a subcontractor for AttainX. (*Id.*) Similarly, pursuant to the Master Contractor

4

Agreement, iLabs continued to perform as Plaintiff's subcontractor in connection with the newly awarded One-Year Bridge Contract.

In February 2020, prior to the issuance of the One-Year Bridge Contract, the federal government awarded Blanket Purchase Agreements ("BPAs") where the federal government could order IT and professional services. (*Id*. ¶ 34.) The BPAs were identified as DAITSS. (*Id*.) AttainX was not awarded the DAITSS BPA. (*Id*. ¶ 35.)

In or around August of 2021, CSC contracted and collaborated with iLabs, unbeknownst to Plaintiff or AttainX, using the knowledge, confidential information, data, and processes iLabs had acquired during performance under the Prime Contracts, preparation under the ELM-3 Initiative, SPRUCE, and the One Year Bridge Contract. (*Id*. ¶ 36.)

CSC and iLabs teamed up and pursued the same work that iLabs was subcontracted to perform under the Master Contractor Agreement. (*Id*. ¶ 37.) At that time, iLabs was still subject to the terms of the Master Contractor Agreement. (*Id*. ¶ 38.) CSC is a direct competitor of Plaintiff and AttainX. (*Id*. ¶ 39.) CSC and iLabs performed the same work as done for the USDA Technical Projects under an order with the DAITSS BPA. (*Id*.) CSC obtained an order from the USDA to perform that work under the BPA with iLabs as its business partner. (*Id*.) CSC subjected iLabs to a non-disclosure agreement preventing iLabs from disclosing its teaming with CSC to Plaintiff. (*Id*. ¶ 40.)

CSC and iLabs submitted a collective bid to the USDA which was accepted in September of 2021. (*Id*. ¶ 41.) CSC and iLabs actively participated in the pursuit process, technical write up, and oral presentations for the order issued under the BPA. (*Id*. ¶ 42.) Subramanian provided confidential information such as staffing and technical support to CSC, and participated in the oral presentation to the USDA during the bid process. (*Id*. ¶ 43.) iLabs began to work actively on its

new project with CSC immediately after the order was awarded to CSC, and while it was still under contract with Plaintiff.  (*Id*. ¶ 44.)

As a result of CSC's work with iLabs and interference with Plaintiff's contract with iLabs, Plaintiff has been damaged.  (*Id*. ¶ 56.)

## II.     PROCEDURAL HISTORY

On May 27, 2022, Plaintiff filed a one-count Complaint against Defendant for unlawful interference with a prospective economic advantage.  (*Id*. ¶¶ 61–66.)  Defendant filed the instant Motion on August 26, 2022.  (ECF No. 12.)

## III.    JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00.

## IV.    LEGAL STANDARD

Upon reviewing a motion to dismiss, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom."  *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).  If the plaintiff is unable to plead sufficient facts to state a claim to relief that is plausible on its face, a motion to dismiss should be granted.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is sufficient, a court must take three steps.  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*. at 679.  Third, "whe[n] there are well-pleaded factual allegations,

a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*. at 679.  In sum, this court's inquiry is normally broken into three parts (1) identifying each element of the claim, (2) striking conclusory allegations, and (3) reviewing the components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.  *Malleus*, 641 F.3d at 563.

## V.  DISCUSSION

Defendant seeks dismissal of the Complaint based on its failure to state a claim for unlawful interference with a prospective business opportunity.  (Moving Br. at 11.)

"Under New Jersey law the five elements of a claim of tortious interference with a prospective or existing economic relationship are: (1) a plaintiff's existing or reasonable expectation of economic benefit or advantage; (2) the defendant's knowledge of that expectancy; (3) the defendant's wrongful, intentional interference with that expectancy; (4) the reasonable probability that the plaintiff would have received the anticipated economic benefit in the absence of interference; and (5) damages resulting from the defendant's interference."  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1167 (3d Cir. 1993) (citing *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir.1992), *cert. denied*, 507 U.S. 921(1993)).

Here, the Court need only analyze the third element because, as set forth below, it concludes that Plaintiff has failed to sufficiently plead facts as to Defendant's wrongful, intentional interference with an existing or reasonable expectation of an economic benefit or advantage.  *See Unitronics, Inc. v. Robotic Parking Sys. Inc.*, Civ. No. 09-3493, 2010 WL 2455169, at *5 (D.N.J. June 18, 2010).

In its Motion, Defendant argues that the Complaint fails to allege CSC had any improper motive or purpose, or that it acted without justification or excuse when it teamed with iLabs to

7

pursue the FLP Call Order that was awarded under the DAITSS BPA. (Moving Br. at 15–16.) Defendant contends that its decision to team with iLabs to compete for the FLP Call Order could not have been with any improper motive because Plaintiff and AttainX could not compete for the FLP Call Order. (*Id*. at 16.) Defendant argues that Plaintiff fails to allege facts to suggest that CSC's decision to team with iLabs to compete for the FLP Call Order was done for any other reason other than to compete with other DAITSS BPA holders. (*Id*.)

In opposition, Plaintiff contends that CSC is asking the Court to accept its conduct was not intentional because it conducts business in a reckless manner by failing to inquire into any potential exclusivity conflicts. (Opp'n Br. at 8.) Plaintiff maintains that CSC's negligent behavior continued during and throughout Plaintiff's and iLab's litigation. (*Id*.) Plaintiff argues that even as litigation had commenced, CSC continued its "brazen conduct" which further demonstrates CSC's tortious behavior. (*Id*. at 9.)[3]

In reply, Defendant reiterates that Plaintiff fails to allege any specific facts from which the Court can infer that CSC had any improper motive or purpose or acted without justification or excuse when it teamed with iLabs to submit a proposal for the FLP Call Order. (Reply Br. at 9.)

As set forth above, the third element of tortious interference with a prospective or existing economic relationship requires the complaint to allege facts claiming that the interference was done intentionally and with "malice." *Saget v. Wells Fargo Bank, N.A.*, Civ. No. 13-3544, 2013

---

[3] In its opposition brief, Plaintiff references information outside the four corners of the Complaint. Specifically, Plaintiff references conduct on behalf of a CSC employee and attaches a text message sent by the CSC employee to an AttainX employee in support of its argument as to the wrongful and intentional element of a tortious interference with a prospective or existing economic relationship claim. (*See* Opp'n Br. at 8–9.) Plaintiff additionally attaches and cites to a Certification of Manoj Mathai, an employee of AttainX. (*See* Opp'n Br. at 8; *see also* ECF No. 17-1 at Ex. B.) As a general rule, the Court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6). *McCrimmon v. Johnson*, Civ. No. 18-16281, 2020 WL 2542307, at *2 (D.N.J. June 30, 2020). The Court may, however, consider any document integral to or explicitly relied upon in the complaint. *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997). Here, the information Plaintiff references, and the documents it attaches to his opposition brief are not integral nor relied upon in the Complaint. Accordingly, the Court will disregard any argument that references such extrinsic information.

WL 6254020, at *2 (D.N.J. Dec. 4, 2013) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751 (1989)).  In this context, malice "is defined to mean that the harm was inflicted intentionally and without justification or excuse."  *Printing Mart-Morristown*, 116 N.J. at 751 (citing *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 N.J. 552, 563, 117 A.2d 889 (1955)) .

Here, the alleged business opportunity with which Plaintiff claims Defendant interfered is referenced in paragraph 39 of the Complaint.  Specifically, the Complaint indicates that CSC and iLabs "obtained an order from the government to perform work under the BPA."  (Compl. ¶ 39.)  Defendant references this "order" as "the FLP Order."  (*See* Moving Br. at 13.)  The Complaint, however, fails to allege that Defendant's acts were inflicted intentionally and without justification or excuse in procuring the FLP Order.  Rather, the Complaint alleges that Defendant, as Plaintiff's direct competitor, teamed up with one of its subcontractors to perform the same work as was done for the USDA Technical Projects.  (Compl. ¶ 39.)  The Complaint additionally alleges that CSC subjected iLabs to a non-disclosure agreement that prevented iLabs from disclosing its "teaming" with CSC.  (Id. ¶ 40.)  Nothing however alleges that CSC acted intentionally and without justification or excuse in procuring this FLP Order.  Accordingly, the Court finds that the Complaint fails to plead a plausible claim for tortious interference with Plaintiff's existing or reasonable expectation of an economic benefit or advantage.  Plaintiff's claim will therefore be dismissed without prejudice.[4]

---

[4] The Court recognizes that it previously granted a preliminary injunction to Plaintiff in a related case, *22nd Century Tech. v. iLabs Inc.*, Civil Action No. 22-717.  In that case there was a contract between the parties, and the Court specifically found in that case that Plaintiff was likely to succeed on the merits of its breach of contract claim as to iLabs for breach of the Master Contractor Agreement's solicitation provision. (ECF No. 49 at 10:3–10.)  That case and injunction, however, is distinguishable from this case and Motion insofar as, here, Plaintiff claims Defendant CSC tortiously interfered with a prospective or existing economic relationship.

## VI. **CONCLUSION**

For the reasons stated above, the Court will GRANT the Motion and DISMISS the Complaint WITHOUT PREJUDICE. The Court will also permit Plaintiff another opportunity to plead its claims by granting leave to file an Amended Complaint within 30 days.

Date: **March 27, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
